## ADAMS v. BANKERS' LIFE CO. et al.

### No. 1204—5561.

Commission of Appeals of Texas, Section B.
March 4, 1931.

Homer L. Baughman and Samuels, Foster, Brown & McGee, all of Forth Worth, for plaintiff in error.

Houtchens & Clark and J. H. Craik, all of Fort Worth, for defendants in error.

### RYAN, J.

This litigation involves the proceeds of a policy of insurance in the amount of $3,000 issued July 24, 1923, by the Bankers' Life Company on the life of T. J. Adams, Sr., who died on June 22, 1926.

Ida M. Adams, wife of the insured, was named beneficiary in the policy, but under its terms the insured had the right of revocation and changing the beneficiary.

The policy shows indorsements, as follows:

First indorsement:

"Notice received and accepted of the change of beneficial interest herein by the insured, from Ida M. Adams, wife, to Jennie Ethel Adams, daughter, of the insured with the right of revocation. Des Moines, Iowa, March 4, 1924. Bankers Life Company, by G. W. Fowler, Secretary, Attest: L. C. Rima."

Second indorsement:

"Notice received and accepted of the change of beneficial interest herein by the insured to Ida M. Adams, wife, of the insured with the right of revocation. Des Moines, Iowa, Jul. 1, 1925, Bankers Life Company, by G. W. Fowler, Secretary, Attest: H. L. Rhodes."

Third indorsement:

"Notice received and accepted of the change of beneficial interest herein by the insured to The Administration or Executor of the insured with the right of revocation. Des Moines, Iowa, Jan. 4, 1926. Bankers Life Company, by G. W. Fowler, Secretary, Attest: E. R. Turby."

Therefore, at the time of the insured's death, the policy on its face was payable to the insured's administrator, or executor, and the proceeds became part of the insured's estate.

On December 30, 1925, the insured, on a company blank, assigned the policy to Dr. T. H. Westbrook as collateral security for any valid pecuniary claim against the assignor existing at the time of settlement of the policy; the remainder of said policy, if any, being unaffected by the assignment. On the same date, the insured executed formal assignment of the policy to Dr. Westbrook, from which we quote as follows:

" * * * The consideration therefor being for a certain indebtedness owing by the said Thomas J. Adams, Sr., to the said T. H. Westbrook and for future indebtedness. It being understood and agreed between the parties that said T. H. Westbrook has and will in the future pay the premiums on said insurance policy; the said T. H. Westbrook having waited on said Thomas J. Adams, Sr., as a physician, and the said Thomas J. Adams, Sr., owing to the said T. H. Westbrook for said services and future services which said T. H. Westbrook may render to the said Thomas J. Adams, Sr.

"It being expressly agreed and understood between the parties that said assignment is to secure the said T. H. Westbrook for said services rendered to the said Thomas J. Adams, Sr., during the past, and such services as may be rendered in the future, and the premiums that have been paid by the said T. H. Westbrook in the past and that may be paid in the future by the said T. H. Westbrook.

"It being agreed and understood that in the event said Thomas J. Adams, Sr., at any time in the future reimburse the said T. H. Westbrook for said premiums which said T. H. Westbrook has paid, and pay him for his services, then said assignment is to become null and void, otherwise to remain in full force and effect. Said T. H. Westbrook hereby agreeing to continue medical aid as he may deem proper and necessary, for and in behalf of the said Thomas J. Adams, Sr., and to keep the premiums on said policy of insurance paid up."

By holographic will dated May 7, 1926, the insured refers to the insurance policy issued by the Bankers' Life Company of Des Moines, Iowa, "which was transferred to Dr. T. H. Westbrook to secure a doctor's bill and for services rendered and to be rendered," and directs that "all doctor bills and funeral expenses be paid first, then the bill owing to the Natatorium Laundry, and the residue to my wife." By said will Dr. T. H. Westbrook and the insured's sister, Mrs. Ben J. Barrow, are appointed "trustees" of his estate, and directed to turn over to his wife all personal property not used to pay the above-named debts, "which are the only debts he desired to be paid."

Mrs. Ida M. Adams filed this suit in the district court of Tarrant county against the Bankers' Life Company and Dr. T. H. Westbrook for the recovery of the proceeds of said policy and for cancellation of the assignment to Dr. Westbrook and of the change in beneficiary, made by the insured, wherein the insured's estate was named as such beneficiary instead of her, on the ground that her husband, the insured, was of unsound mind at the time of the change in beneficiary and execution of the assignment, and on the further ground that the assignment was procured by fraud and undue influence on the part of Dr. Westbrook.

Only the insurance company and Dr. Westbrook individually were named as defendants in the first amended original petition, on which plaintiff went to trial, and the prayer was for a judgment canceling and annulling the change in beneficiary from "this plaintiff to the estate of Thomas J. Adams, and any assignment from Adams to Dr. T. H. Westbrook, and that she be declared to be the beneficiary in said policy of insurance, and have judgment against the defendants for the amount due thereon, with interest, costs of suit and general relief."

No legal representative, either administrator or executor, of the estate of the deceased insured, was made a party to the suit; neither does the petition allege that no administration was pending on the estate and that there is no necessity therefor.

The insurance company filed general demurrer to plaintiff's petition, admitted issuance of, and liability under, the policy, tendered the proceeds thereof into court, with the averment that it is informed and believes that proceedings have been commenced in the county court of Tarrant county in the matter of the estate of Thomas J. Adams, Sr., deceased, but that no administrator or executor had as yet qualified or been appointed therein; that if, and when, an executor or administrator is qualified, he should be made a party defendant in this cause, and required to appear and set

out the nature of his claim, if any, to the fund in controversy.

Defendant Westbrook pleaded in abatement the pendency of proceedings in the county court for administration of Adams' estate, by reason of which further cognizance of this case should not be taken other than to dismiss or abate the hearing thereon until the county court shall finally dispose of the matters before it in the matter of said estate. The plea in abatement was overruled by the trial court, and the case resolved itself (as well in the Court of Civil Appeals, as in the district court) into a contest betweeen the plaintiff, Mrs. Ida Adams, who claimed as the original beneficiary named in the policy, on the one hand, and the defendant Westbrook, individually, on the other hand; his contention being that the insured changed the policy for the purpose of securing the payment of a substantial doctor's bill for services rendered and money advanced to the insured during his last illness. Westbrook's prayer was that there be adjudicated to him the amount of his debt for services and moneys advanced, and that plaintiff, Mrs. Ida Adams, be estopped from claiming that said assignment is invalid and that he (Westbrook) is not entitled to be paid out of the proceeds of said policy, and from claiming such proceeds in so far as the same may affect his debt. The son and daughter, only surviving children of Adams, disclaimed any interest in the proceeds of the policy, and adopted their mother's pleadings.

Trial was had before a jury, who found, in answer to the first special issue submitted, that the deceased was of unsound mind at the time he signed the transfer of the policy and assignment introduced in evidence; the trial court accordingly entered its judgment in favor of plaintiff, Mrs. Ida M. Adams, for the recovery of the money deposited in court by the insurance company, less $100 attorney's fee; that the change of beneficiary and assignment in question be set aside and canceled, that the deceased's surviving children take nothing; and that Dr. Westbrook pay all costs of suit.

On appeal to the Court of Civil Appeals at Fort Worth [17 S.W.(2d) 116], the judgment of the trial court was reversed, and the cause remanded for a new trial, on the ground that elements of equity and estoppel were presented, which should have been submitted as issues to the jury, on the theory that Mrs. Adams was estopped and should not be permitted to recover without making compensation out of the proceeds of the policy for the reasonable value of the services and advances so made, Dr. Westbrook having alleged and offered to prove that the deceased was in destitute and necessitous condition, that medical services and advancements of money, including two payments of premiums on the policy involved, constituted necessaries which the wife failed or refused to supply, and which he, with her knowledge, consent, and acquiescence, did furnish, and that the change of beneficiary in the policy, including the assignment thereof, was, with her knowledge and consent, made to secure him in payment for the services performed and cash advanced by him.

The Court of Civil Appeals found that the testimony of defendant tended to support these allegations, and that the trial court refused to submit such issues to the jury. The Court of Civil Appeals did not pass on the plea in abatement or the trial court's action in overruling it, although properly assigned as error.

### Opinion.

The issue in this case is, To whom should the proceeds of the policy be paid?

Under the terms of the policy, as changed under the insured's direction, such proceeds are payable to his executor or administrator. Mrs. Adams contends that, when the insured directed such disposition thereof to be made, he was of unsound mind, and therefore such direction should be given no effect, with the result that she still remains the beneficiary and the proceeds payable to her.

Dr. Westbrook's claim, if any he has, is against the estate of the insured, and his only claim against the policy is if and when it is adjudged a part of the insured's estate, and then only in the manner provided by law through its establishment and classification in the probate court, after presentation to, and approval by, the executor or administrator.

If the proceeds of the policy are a part of the insured's estate, then he may have his lien thereon recognized and established by the probate court in a proper administration of the estate.

If the proceeds of the policy are not a part of the insured's estate, but belong to Mrs. Adams, then Dr. Westbrook has no claim or lien thereon, and can collect his claim against her deceased husband only out of whatever may constitute the estate and applicable thereto.

Mrs. Adams' contest for the proceeds of the policy, therefore, is not with Dr. Westbrook to determine the ownership of the policy, but with her husband's estate, which can be represented only by an executor or administrator properly appointed by the probate court. Such proceeds belong either to her husband's estate, by virtue of change in beneficiary of the policy, or to Mrs. Adams, if such change was ineffective because the insured was of unsound mind when he caused such change to be made.

■■■ The estate of Thomas J. Adams, Sr., represented by an executor or administrator legally appointed by the proper probate court,

is an indispensable party to this litigation involving the proceeds of such policy; a necessary party is one so vitally interested in the matter that a valid decree cannot be rendered without his presence as a party, Bingham v. Graham (Tex. Civ. App.) 220 S. W. 105; no effective judgment disposing of the policy and its proceeds can be rendered divesting the insured's estate thereof, until such estate through its proper legal representative is before the court trying the issue, Laas v. Seidel, 95 Tex. 442, 67 S. W. 1015; Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640; Bluitt v. Pearson, 117 Tex. 467, 7 S.W.(2d) 524; Modern Woodmen v. Yanowsky (Tex. Civ. App.) 187 S. W. 728; Townes Texas Pleading (2d Ed.) 258.

■■ The executor or administrator has the right to the possession of the estate (except such as may be exempted by law) as it existed at the death of the testator or intestate, and he must recover such possession and hold such estate in trust to be disposed of according to law, Rev. Civ. Stat. 1925, art. 3314; he is required to collect by suit or otherwise all debts due the estate, Canfield v. Newman (Tex. Civ. App.) 265 S. W. 1052; McCelvey v. McCelvey, 15 Tex. Civ. App. 105, 38 S. W. 473.

The nonjoinder of the estate through its executor or administrator appointed by the county court of Tarrant county, where an application therefor was then pending [O'Neil v. Norton (Tex. Com. App.) 29 S.W.(2d) 1060, 1061; Cowart v. Miner (Tex. Com. App.) 29 S. W.(2d) 1007], is fatal to the recovery sought; such executor or administrator should be made a party to this suit; the Court of Civil Appeals failed to pass on the question, and disposed of the case apparently on the theory that the insured's estate is not a necessary party, and that the only parties interested in the policy and its proceeds are Mrs. Adams and Dr. Westbrook.

■ The nonjoinder of a party necessary to the main issue is fundamental, and requires either a dismissal of the suit or a stay of proceedings until such party can be brought in. This is the rule, no matter when or how the absence of such party may become apparent. De La Vega v. League, 64 Tex. 205; Buffalo Bayou Ship Channel Co. v. Bruly, 45 Tex. 8.

■ The objection of nonjoinder of such a party may be made by plea in abatement, general demurrer, special exception, motion for new trial, suggestion of fundamental error on appeal, or otherwise; whenever it comes to the knowledge of the court, the result must be the same—either the dismissal or stay of the case. Townes Texas Pleading (2d Ed.) p. 288; 1 Tex. Jur. p. 144.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial in accordance with this opinion, and that the judgment of the Court of Civil Appeals so reversing and remanding be affirmed, but only for the reasons set out herein.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversing that of the district court is affirmed, and the cause remanded for further proceedings in accordance with the recommendations of the Commission of Appeals, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.